Fourth Division
June 19, 2008

No. 1-05-3370

| | | |
|---|---|---|
| *In re* MARK W., a Minor, | ) | |
| | ) | Appeal from the |
| Respondent | ) | Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 99 JA 00877 |
| | ) | |
| Delores W., | ) | |
| Respondent | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Sharon Coleman |
| (AMY B., | ) | Noreen Daly |
| | ) | Candace Fabri, |
| Respondent-Appellant)). | ) | Judges Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

Amy B., respondent and plenary guardian of the person for Delores W., the mentally-disabled-adult mother and respondent, appeals from the July 12, 2005, order of the juvenile court finding Delores W.[1] unfit.  Following the termination of the parental rights hearing, a best-interest hearing was held where the trial court terminated Delores W.'s parental rights to Mark W.

On December 29, 2006, this court reversed and remanded the trial court's order that

---

[1]In the record there are two spellings for the mother's name: Delores and Dolores.  We will use the Delores spelling.

terminated Delores W.'s parental rights. On April 3, 2008, the supreme court reversed this court and remanded the case with directions that we address the issues that were initially raised in Amy B.'s appeal. Accordingly, pursuant to the supreme court's directions, we review Amy B.'s claims on the merits.

In this appeal, Amy B. presents the following issues for review: (1) whether Delores W., a mentally disabled adult with a plenary guardian of the person, was denied due process by the juvenile court when on December 9, 2002, the juvenile court appointed a guardian *ad litem* (GAL) during a hearing to terminate the mother's parental rights; (2) whether the trial court's findings at the termination of parental rights hearings were against the manifest weight of the evidence; (3) whether the trial court had jurisdiction to terminate the parental rights of Delores W. when Delores W.'s plenary guardian of the person had not received notice of the proceedings; and (4) whether the trial court abused its discretion when it denied the plenary guardian's attempts to call witnesses, including the minor. For the reasons that follow, we affirm.

BACKGROUND

The Probate Court's Determination That Delores W. is Disabled

On August 29, 1997, the probate court entered an order naming Amy B., Delores W.'s mother, plenary guardian of the person for Delores W. The probate court found, as of July 10, 1997, that a report by Dr. Simon Gewold indicated that Delores W. is mentally handicapped, has mild to moderate mental retardation, and functions at a third-grade level. The probate court's order indicated that the appointment of a GAL for the guardianship proceedings had been waived. The probate court issued letters of office to Amy B. naming her plenary guardian of the person of Delores W., a

disabled person. The letters of office provided that Amy B. "is authorized to have under the direction of the court the custody of the ward and to do all acts required by law."

### The Birth of Mark W.

According to the petition for adjudication of wardship, on July 1, 1998, approximately 10 months after Amy B. was appointed Delores W.'s plenary guardian of the person, Delores W. gave birth to a son, Mark W. Mark W.'s father is Bradley B, who is not a party to this appeal.

### The Juvenile Court's Termination of Delores W.'s Parental Rights

The Illinois Department of Children and Family Services' (DCFS) client service plan for March 31, 1999, reveals that Mark W.'s babysitter called DCFS and reported that Delores W. had forced a plastic toy down Mark W.'s mouth and that she hit him on the head with a television remote control. On April 4, 1999, DCFS took protective custody of Mark W. and placed him in foster care with his maternal grandmother, Amy B. At the same time, Mark W.'s mother, Delores W., was also a resident in Amy B.'s home because Amy B. was the plenary guardian of her person.

### The Temporary Custody Hearing

On April 8, 1999, the State filed a petition for adjudication of wardship alleging that, pursuant to sections 2-3(1)(b) and 2-3(2)(ii) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(l)(b), (2)(ii) (West 1998)), nine-month-old Mark W. was neglected in that his environment was injurious to his welfare and that he was abused due to a substantial risk of physical injury. The following information was provided to support the allegations in the petition:

> "On or about March 31, 1999, natural mother shoved a plastic object
>
> into minor's mouth and down his throat causing minor to gag.

Natural mother then hit minor on the head with an object several times. Natural mother also attempted to choke minor when minor continued to cry. Natural mother grabbed minor and attempted to pull minor away from another individual."

On April 9,1999, the court took temporary custody of Mark W., and DCFS placed Mark W. in the care of Amy B. On July 29, 1999, Mark W. was removed from Amy B.'s care to a specialized foster care placement due to risk of harm and concerns about Amy B.'s parenting skills. Mark W. had what appeared to be burns on his stomach and on his toe that Amy B. was unable to explain.

The Appointment of an Attorney and GAL for Delores W.

On October 3, 2000, Mark W.'s case was set for trial, but Judge Sharon Coleman was informed by the assistant State's Attorney that Delores W. was not represented by an attorney. Judge Coleman had a discussion with Amy B. about Delores W.'s resources and confirmed that the probate court had appointed her guardian of Delores W. After the discussion with Amy B., Judge Coleman made the following statement:

"The Court will make a finding of indigency as to Deloris [*sic*], and per your motion the Court will appoint an attorney to represent the mother.

* * *

The Court believes that would be the appropriate thing to do, understanding that that attorney is going to be appointed to represent her as attorney and as guardian *ad litem*.

- 4 -

As for legal purposes only you [Amy B.] are still her legal guardian. But for legal purposes in this court she will have a guardian ad litem, so everyone understands?

* * *

And you can confer with that person to a certain extent, but that person also has a dual role as an attorney and as a guardian ad litem. This is a person who is a guardian for minors or people who have to have someone speak to them and have guardian *ad litem*. Just like a child can't speak for themselves. Do you understand that?

* * *

That personal [*sic*] will consult with you, but they will also speak independently with you. Do you understand that? You will not have authority over that person. Do you understand that?

* * *

Apart from the parent. In this case you have a mother who has a legal guardian because of her condition, and that needs to be able to watch over her everyday living, and she will have an attorney who will consult with you as an attorney, but that attorney will also be her guardian ad litem and may speak with two hats on, okay?"

Judge Coleman passed the case to "make sure" Delores W. and Amy B. had an opportunity to meet with and speak to the bar attorney that the court intended to appoint. When the case was

recalled, Ray Morrissey, the bar attorney the court intended to appoint, reported that he had met and talked with Delores W. and Amy B., and he made the following statement to the court:

"Your Honor, Ray Morrissey. I am the bar attorney today, and I have attempted to speak with the mother along with her guardian. The guardian is not present at this time. She has made it known emphatically clear that she does not want me to represent her daughter as attorney or guardian, and that she wants to hire a private attorney for her daughter.

* * *

I have talked to the mother, and I also explained to the guardian that there may be a conflict between what she feels is in the best interest of her daughter and what I feel is the best interest, and then she stopped me and she said: I want to hire a private attorney for my daughter.

* * *

I have no problem with accepting appointment as the guardian. I am just not sure if she [Amy B.] as a legal guardian would have a right to hire a private attorney for her daughter."

After learning from Morrissey that Amy B. did not want him appointed to represent Delores W. as either her attorney or GAL, Judge Coleman stated that Amy B. would be allowed time to hire a private attorney. Finally, Judge Coleman did not enter an order appointing Morrissey as Delores W.'s

attorney but entered an order appointing Morrissey as Delores W.'s GAL.[2]

The First Adjudicatory and Dispositional Hearings

On October 10, 2000, Judge Coleman entered an order amending the petition for adjudication of wardship as follows: "the minor is dependant in that he is under 18 years of age and is without proper care because of the physical or mental disability of his parent, guardian or custodian pursuant to 705 ILCS 405/2-4." On November 27, 2000, Judge Coleman held an adjudicatory hearing and found that Mark W. was a dependant child, pursuant to section 2-4 of the Juvenile Court Act (705 ILCS 405/2-4 (West 1998)), due to the mental condition of his mother. On March 29, 2001, Judge Coleman conducted a dispositional hearing making Mark W. a ward of the State.

Judge Noreen Daly was presiding over Mark W.'s case on March 15, 2002, and, after making a finding that Amy B., the plenary guardian of Delores W.'s person, had not been notified, Judge Daly vacated the adjudicatory and dispositional orders. The court based its decision upon In re K.C., 323 Ill. App. 3d 839, 852 (2001), which held that the plenary guardian of a disabled person whose parental rights are the subject of proceedings under the Juvenile Court Act is a necessary party under the Act and must be named as a party respondent and served with notice. The adjudication of wardship petition was amended and added Amy B.'s name as a respondent. On October 15, 2002, the adjudication of wardship petition was again amended to include the following:

"The maternal grandmother was appointed as-the natural mother's

---

[2] Although the October 3, 2000, order is ambiguous and does not specifically indicate whether Morrissey was appointed as both Delores W.'s attorney and GAL, the October 3, 2000, transcript is clear that Morrissey was only appointed as Delores W.'s GAL.

plenary guardian of the person on August 29, 1997. The natural

mother is incapable of taking care of herself or the minor due to her

disability. On or about March 29, 1999 the natural mother left the

home with the minor without any additional supervision. On or about

March 30, 1999 the natural mother ran away with the minor without

any additional supervision on two occasions."

On December 9, 2002, Judge Daly was informed by the parties' attorneys that Delores W. had a GAL, but was not represented by an attorney. Judge Daley stated that she was unaware that Delores W. did not have an attorney because she thought that Morrissey was Delores W.'s attorney. Finally, Judge Daly appointed Mark W. Kusatzsky, a bar attorney, as Delores W.'s legal counsel.

The Second Adjudicatory and Dispositional Hearings

On January 17, 2003, the juvenile court held a second adjudicatory hearing and entered an adjudication order finding that Mark W. was neglected due to exposure to an injurious environment and was abused due to exposure to a substantial risk of physical injury. The reasons given for the court's findings were that Delores W. has mental limitations and Delores W.'s legal guardian, Amy B., failed to ensure that Delores W. was supervised at all times, resulting in Delores W. hitting Mark W. and putting plastic toys in his mouth. The adjudication order noted that the findings were the result of abuse or neglect inflicted by a parent.

On March 6, 2003, the juvenile court entered a dispositional order adjudging Mark W. a ward of the court and finding that (1) Delores W. was unwilling and unable for reasons other than financial circumstances to care for, protect, train, or discipline the minor; (2) Bradley B. was unable

for reasons other than financial circumstances to care for, protect, train, or discipline the minor; and (3) Amy B. was unwilling and unable for reasons other than financial circumstances to care for, protect, train, or discipline the minor. The court placed Mark W. under the guardianship of DCFS. On January 16, 2004, the juvenile court found that Delores W. had not made any progress toward the goal of return home, and the juvenile court established a permanency goal of substitute care pending court determination on termination of parental rights.

In August of 2004, the juvenile court entered an order allowing six-year-old Mark W. to move to California with his foster mother Michelle N., who had been caring for Mark W. for four years.

### The Fitness Hearing

On November 9, 2004, the fitness portion of the termination proceedings began. During the hearing on November 9, 2004, Judge Fabri, another judge who presided over the case, wanted a history of the case: an explanation of why Amy B., the plenary guardian, and Morrissey, the GAL, were both guardians in the same case. Kusatzky, Delores W.'s court-appointed attorney, explained to Judge Fabri how Morrissey was appointed as Delores W.'s GAL in the proceedings to terminate Delores W.'s parental rights. While Judge Fabri did not think that Delores W. needed a guardian and a GAL, she permitted Morrissey to remain on the case as Delores W.'s GAL.

The State presented the following witnesses: (1) Meg O'Rourke, a clinical social worker employed at Little City Foundation; (2) Traneeka Jackson, a caseworker employed at Little City Foundation; and (3) George Kaulich, a DCFS investigator.

Meg O'Rourke, a part-time employee of the Little City Foundation, testified during the

fitness portion of the termination proceeding that she was the supervisor of Mark W.'s case. O'Rourke testified that her duties included (1) having regular supervision of the caseworker; (2) insuring that the needs of the child and the family involved are met; and (3) making sure that the case was moving towards the permanency goal. O'Rourke testified that Delores W.'s indicated services included regular visitation, weekly visitation, vocational programs, parenting classes, medication monitoring and individual and family counseling for her and Amy B. According to O'Rourke, the goal, at least at the beginning, was definitely toward a return for the child to her.

O'Rourke testified that she believed Delores W. had received a diagnosis of mild mental retardation. O'Rourke also testified that Delores W. was rated unsatisfactory on the parental assessment, in part, because she did not participate in the assessment. She was also rated unsatisfactory for failing to consistently take her prescribed medication. However, when Delores W. participated in individual therapy, she was rated satisfactory. O'Rourke also testified that the goal changed in January 2004 from return home to termination of parental rights. Finally, O'Rourke testified that her supervision of the Mark W. case ended in mid-September 2004.

Traneeka Jackson, an adoption specialist working for the Little City Foundation, testified that in October 2001, she was assigned to work on the Mark W. case as a child welfare specialist. Jackson testified that she sent a letter to Delores W. that offered parenting assessment evaluation services. According to Jackson, Delores W. attempted to engage in services but did not complete them by the end of 2003. Jackson also testified that she attempted to communicate with Amy B. by telephone to learn if she would permit the release of her daughter's information to be released by agencies and offices in which she was already participating. However, Jackson testified that Amy

B. refused to provide them with the releases they sought to obtain information from the service providers. Jackson also testified that Amy B. informed her that she and Delores W. did not wish to participate in any of the services offered by Little City. Jackson testified that Amy B.'s refusal to permit her daughter to participate in services was laced with obscenities and vulgar language. Jackson also testified that Amy B. became abusive during some of Mark W.'s visitations with his mother. Finally, based upon inconsistent visitations and incomplete service plans, Jackson recommended against unsupervised visitations.

George Kaulich, a DCFS investigator, testified that his investigation revealed that Delores W. had an adult guardian. Kaulich also testified that his investigation revealed that Amy B. was Delores W.'s adult guardian. Kaulich testified that he spoke with Amy B regarding her daughter and her mental health issues but that Amy B. became abrasive and uncooperative. According to Kaulich, Amy B. stated that she did not want to be involved with DCFS.

Neither Delores W. nor Amy B. was present during the termination proceedings, but their attorneys were present in court. Amy B. was represented by attorney Dean Bastounes. Delores W. was represented by Kusatzky, and Morrissey appeared as Delores W.'s GAL.

After all the parties rested, the State maintained that Delores W. should be found unfit. Morrissey, Delores W.'s GAL, along with the State and the Public Guardian, asked the court to find Delores W. to be unfit. Morrissey told the court that he understood that the court felt this was an unusual approach for someone in his position to take. He explained that the testimony had made clear that the only way Delores W. could be reunited with Mark W. would be if she entered a residential assisted-living program. Morrissey maintained that Delores W. had been given the

opportunity to do so, but had chosen not to. Based on these facts, Morrissey felt that the State had met its burden of proving Delores W. unfit. Both Delores W.'s attorney, Kusatzky, and Amy B.'s attorney, Bastounes, argued against the findings of unfitness.

On April 29, 2005, the juvenile court found that Delores W. was unfit based upon her failure to maintain a reasonable degree of interest, concern, or responsibility and based upon her failure to make reasonable progress. Delores W.'s failure to visit with Mark W. and to comply with the service plans established her failure to maintain reasonable interest, concern, or responsibility. The juvenile court further found that Delores W. failed to make reasonable progress toward Mark W.'s return home, not only during the first nine months after the adjudication in January of 2003, but during the entire year-long period beginning with the adjudication and ending with the change of the permanency goal in January of 2004.

Best Interest Hearing

On July 12, 2005, the trial court commenced the best interest hearing. The State presented the following witnesses: (1) Michelle N., Mark W.'s foster mother; (2) Traneeka Jackson, a caseworker employed by Little City Foundation; (3) Tina Dorow, an adoption supervisor employed at Little City Foundation; and (4) Julie Evets, a caseworker employed by Little City Foundation.

Michelle N. testified that Mark W. was placed with her when he was two and that he was seven at the time of the best interest hearing. Michelle N. testified that, when he was first placed with her, Mark W. needed special services, including occupational therapy, physical therapy, speech therapy, vision therapy and play therapy. However, with her help to make certain that he attended the needed therapy sessions, Mark W. made great progress. Michelle N. also testified that Mark

W.'s asthma has improved during his time in her smoke-free home. Michelle N. also testified that Mark W. does not need to attend daycare because she always picks him up from school. According to Michelle N., she views Mark W. as her son and treats him no differently than she treats her other children.

Traneeka Jackson testified that she was Mark W.'s caseworker from October 2001 until June 2005. Jackson testified that, during that time, she found Michelle N.'s home to be an appropriate place for Mark W. to live. Jackson also testified that she found the interaction between Mark W. and his foster mother to be very positive and that, although she disciplined him when needed, Jackson never feared for Mark W.'s safety while he was in Michelle N.'s home. Jackson further testified that, when he was asked where he wanted to live, Mark W. told her that he wanted to live with his "mommy," Michelle N.

Tina Dorow, of the Little City Foundation, testified that she was assigned as Mark W.'s caseworker in June 2005. Dorow testified that Little City recommended that Delores W.'s parental rights be terminated (1) because of the lack of consistent contact between Delores W. and Mark W; (2) because Delores W. failed to engage in needed reunification services; (3) because Mark W. had developed a strong and positive relationship with Michelle N. and her extended family; and (4) because, while in the custody of his foster mother, Mark W. experienced positive progress in the areas of his special needs and his education.

Julie Evets, of the Little City Foundation, testified that she was assigned as Mark W.'s caseworker during 2000 and 2001 and was reassigned before the best interest hearing at which she testified. Evets testified that, because there had been no visits between Delores W. and Mark W.

following Michelle N.'s move to California, she attempted to facilitate a meeting. According to Evets, when she telephoned Amy B. to get an address, Amy B. refused to give her address because she feared that she would be subpoenaed. Amy B. agreed to permit a visit at her attorney's office. Evets also testified that, after further attempts to facilitate a public meeting, Amy B. told her that she wanted no further contact with the Little City Foundation and that she did not want anyone asking her about visits between Mark W. and Delores W.

After the conclusion of the testimony of Michelle N., Traneeka Jackson, Tina Dorow, and Julie Evets, the State, the Public Guardian, and Morrissey, as Delores W.'s GAL, each asked the court to grant the State's petition. Counsel for Delores W. and counsel for Amy B. asked that the State's petition be denied. The juvenile court found, by a preponderance of the evidence, that it was in Mark W.'s best interests to terminate Delores W.'s parental rights and to appoint a guardian with the right to consent to his adoption. The juvenile court entered an order on July 12, 2005, which found Delores W. unfit under sections 1(D)(b) and 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(m) (West 1998)), found the father unfit, terminated the rights of the parents, and appointed a guardian with the right to consent to Mark W.'s adoption.

Amy B.'s Motion to Reconsider

On August 10, 2005, Amy B. filed a motion to reconsider which included, among other things, an allegation that the juvenile court erred by allowing Delores W.'s GAL, Morrissey, to remain on the case after he took a position favoring termination of Delores W.'s rights and that the evidence failed to show that it was in Mark W.'s best interests to terminate Delores W.'s parental rights. On September 16, 2005, the court entered an order denying the motion to reconsider. On

October 14, 2005, Amy B. filed a notice of appeal from the June 9, 2005, order finding that Delores W. was unfit, the July 12, 2005, order terminating Delores W.'s parental rights, and the September 16, 2005, order denying her motion to reconsider.

On December 29, 2006, this court reversed the judgment of the trial court that terminated the mother's parental rights in an opinion that found that the appointment of the GAL rendered the termination proceeding fundamentally flawed because Morrissey had a conflict but continued to represent Delores W. In re Mark W., 371 Ill. App. 3d 81, 101 (2006). The supreme court reversed and remanded this case to the appellate court with directions "to address those issues that were initially raised by Amy in her appeal from the judgment of the circuit court terminating Delores' parental rights." In re Mark W., 228 Ill. 2d 365, 381 (2008).

## ANALYSIS

### Authority to Appoint a Guardian *ad Litem*

The first question presented to this court is whether a mentally-disabled-adult parent, represented by a plenary guardian of the person appointed by the probate court, was denied due process by the juvenile court when, during the proceedings to terminate the parental rights of the mentally-disabled-adult mother, the juvenile court permitted the bar attorney to hold an attorney-client conference with the mother and her guardian, but only appointed the bar attorney as a GAL for the mentally-disabled-adult mother so he could inform the court about the adult mother's best interests.

Amy B. argues that Delores W.'s due process rights were violated because Morrissey, her GAL, was ineffective when he advocated to the juvenile court that Delores W.'s parental rights be

terminated. The Public Guardian argues that although the juvenile court had no authority, pursuant to either the Juvenile Court Act or case law, to appoint Morrissey as Delores W.'s GAL, there was nothing to prevent the juvenile court from appointing Morrissey as Delores W.'s GAL. The Public Guardian also argues that Morrissey's role as GAL was not to advocate for Delores W., but to make recommendations to the juvenile court that he believes are in the best interest of Delores W., even if his opinion is contrary to the desires of Delores W.

The State argues that the Juvenile Court Act does not address whether the court may appoint a GAL for an indigent, disabled parent in termination-of-parental-rights proceedings. The State maintains, instead, that Morrissey, as Delores W.'s GAL, acted properly and that in any event the evidence of Delores W.'s unfitness was overwhelming. The State also argues that Delores W.'s due process rights were not violated because she was provided with counsel to advocate the position she chose and a GAL to advocate the position that was deemed to be in her best interests.

Our supreme court held that, without being limited to the dictates of express statutory terms, when dealing with a disabled person, "[t]he court has a duty to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm." Mark W., 228 Ill. 2d at 375, citing In re Estate of Nelson, 250 Ill. App. 3d 282, 287 (1993). The supreme court also held that " '[t]he circuit court is charged with a duty to protect the interests of its ward and has, *by statute and otherwise*, those powers necessary to appoint a guardian *ad litem* to represent the interests of the respondent during the court's exercise of its jurisdiction.' " (Emphasis added.) Mark W., 228 Ill. 2d at 375, quoting In re Serafin, 272 Ill. App. 3d 239, 244 (1995).

The supreme court continued and stated that "[a] guardian *ad litem* functions as the 'eyes and

ears of the court' and not as the ward's attorney." Mark W., 228 Ill. 2d at 374, quoting In re Guardianship of Mabry, 281 Ill. App. 3d 76, 88 (1996), citing In re Marriage of Wycoff, 266 Ill. App. 3d 408, 415 (1994). The supreme court noted that "[t]he traditional role of the guardian *ad litem* is not to advocate for what the ward wants but, instead, to make a recommendation to the court as to what is in the ward's best interests." Mark W., 228 Ill. 2d at 374, citing Mabry, 281 Ill. App. 3d at 88. The supreme court found that, although no provision in the Juvenile Court Act or the Probate Act explicitly granted the trial court the authority to appoint a GAL for Delores, no statutory provision expressly forbids such an appointment of a GAL under the circumstances of this case. In re Mark W., 228 Ill. 2d 365, 374-75 (2008). Therefore, the supreme court stated "[t]he question, then, is whether in the absence of controlling statutory authority, the circuit court has the authority to make such an appointment. We believe it does." Mark W., 228 Ill. 2d at 374. Finally, answering the question presented in this case, the supreme court held that "[i]n accordance with this precedent, and given Delores' status as a disabled person entitled to the utmost protection of the courts, we have little difficulty concluding that the circuit court had the authority to appoint a guardian *ad litem* to make a recommendation to the court as to what was in Delores' best interests." Mark W., 228 Ill. 2d at 375.

## Parental Unfitness

Next, Amy B. argues that the trial court's findings at the termination of parental rights hearing were against the manifest weight of the evidence because it does not support a finding (1) that Delores W. did not maintain a reasonable degree of interest, concern or responsibility for the child's welfare as required by section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West

2002)); and (2) that Delores W. failed to make reasonable progress toward the return of the child to her as required by section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2002)).

The Public Guardian argues that the record sufficiently demonstrates that Delores W. failed to maintain a reasonable degree of interest, concern or responsibility for the child's welfare because, although she engaged in some of the reunification services called for by the service plans implemented by DCFS, she ultimately proved unsatisfactory in almost all of those services. The Public Guardian also argues that Delores W. failed to make reasonable progress toward Mark's return home.

Much like the Public Guardian, the State also argues that the record sufficiently demonstrates that Delores W. failed to maintain a reasonable degree of interest, concern or responsibility for the child's welfare and adds that a person can be found unfit without fault if that person is unable rather than unwilling to comply with the statutes. The State also argues that the failure to comply with service plans and court directives is sufficient evidence to support the findings that Delores W. (1) failed to maintain a reasonable degree of interest, concern or responsibility; and (2) failed to make reasonable progress toward the child's return home.

We note that "cases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances." In re Arthur H., 212 Ill. 2d 441, 463 (2004), citing In re N.B., 191 Ill. 2d 338, 346 (2000), and In re Christina M., 333 Ill. App. 3d 1030, 1034 (2002). "This analytical principle underscores the 'fact-driven nature of neglect and injurious environment rulings.' " Arthur H., 212 Ill. 2d at 463, quoting N.B., 191 Ill. 2d at 346.

The Juvenile Court Act provides a step-by-step process that courts use to decide whether a

child should be removed from his or her parents and made a ward of the court. Arthur H., 212 Ill. 2d at 462, citing 705 ILCS 405/1-1 *et seq.* (West 2000). Once a child is placed in temporary custody, a trial court must make a finding of abuse, neglect or dependence before it conducts an adjudication of wardship. Arthur H., 212 Ill. 2d at 462, citing 705 ILCS 405/2-21 (West 2000), and In re N.B., 191 Ill. 2d 338, 343 (2000). The State's burden is to prove the allegations of abuse, neglect or dependency by a preponderance of the evidence. In re Faith B., 216 Ill. 2d 1, 13 (2005), citing In re Arthur H., 212 Ill. 2d 441, 463-64 (2004). The trial court's findings of abuse, neglect or dependence are known as an adjudication of unfitness which requires supporting grounds that are found in section 1(D) of the Adoption Act. In re Janira T., 368 Ill. App. 3d 883, 892 (2006), citing 750 ILCS 50/1(D) (West 2002), and In re Chilean, 304 Ill. App. 3d 580, 583 (1999). "Although section 1(D) sets out various grounds under which a parent may be deemed unfit, an unfitness finding may be entered if there is sufficient evidence to satisfy any one statutory ground." Janira T., 368 Ill. App. 3d at 892, citing In re Donald A.G., 221 Ill. 2d 234, 244 (2006). The trial court's "finding of parental unfitness must be supported by clear and convincing evidence." Janira T., 368 Ill. App. 3d at 892, citing In re Katrina R., 364 Ill. App. 3d 834, 842 (2006). "Only if the court makes a finding of unfitness will the court go on to consider whether it is in the best interest of the child to terminate parental rights." In re Reiny S., 374 Ill. App. 3d 1036, 1045 (2007), citing 705 ILCS 405/2-29(2) (West 2004); see also, In re C.W., 199 Ill. 2d 198, 210 (2002). Therefore, we only disturb the trial court's finding that there has been a showing of clear and convincing evidence that a parent is unfit if that finding is found to be against the manifest weight of the evidence. Faith B., 216 Ill. 2d at 13-14, quoting Arthur H., 212 Ill. 2d at 464; see also Janira T., 368 Ill. App. 3d at 892, citing In re D.D.,

196 Ill. 2d 405, 417 (2001).

In this case, Mark W. was adjudicated a neglected and abused child in January 2003. In March 2003, the trial court made Mark W. a ward of the court after finding Delores W. unable to care for him. In order to determine a parent's fitness and whether the parent has failed to maintain a reasonable degree of interest, concern and responsibility (750 ILCS 50/1(D)(b) (West 2002), and has failed to make reasonable efforts and reasonable progress toward reunification (750 ILCS 50/1(D)(m)(ii) (West 2002),) "the trial court must focus on the parent's 'reasonable efforts' during the initial nine-month period following the adjudication of neglect" (In re Veronica J., 371 Ill. App. 3d 822, 828 (2007), citing In re D.F., 208 Ill. 2d 223, 239 (2003)). "The 'initial nine-month period' begins upon the entry of the court's order of adjudication." Veronica J., 371 Ill. App. 3d at 828, citing D.F., 208 Ill. 2d at 241-42. Therefore, the relevant period after adjudication is the nine-month period between January 17, 2003, and October 17, 2003.

The record reveals (1) that Delores W. only visited Mark W. three times, which represented approximately 25% of her visitation opportunities; (2) that, with the exception of her completion of a home parenting class with house calls, Delores W. was rated as unsatisfactory on six out of seven service plans and failed to comply with those service plans; (3) that, because Amy B. would not sign consent forms for the release of information about Delores W.'s participation in day treatments, individual therapy and family therapy, that information was not available; (4) that, when she did have visits with Mark W., the child was distant and no bond was observed; and (5) that, despite Amy B.'s consent to allow Delores W. to participate in professional assessments by the parenting assessment team, both Amy B. and Delores W. were hostile, threatening and abusive. The record also reveals

that the trial court considered these facts while also considering the obstacles that were arguably caused by Delores W.'s developmental disabilities and the fact that she (Delores W.) had Amy B. as her guardian. In light of the aforementioned evidence, we cannot say that the trial court's decision was against the manifest weight of the evidence or that the opposite conclusion is clearly evident. Faith B., 216 Ill. 2d at 13-14, quoting Arthur H., 212 Ill. 2d at 464; see also Janira T., 368 Ill. App. 3d at 892, citing In re D.D., 196 Ill. 2d at 417.

### Best Interest of the Child

In child custody cases, parental rights are considered to be of fundamental importance, therefore, courts will not lightly terminate them. In re Veronica J., 371 Ill. App. 3d 822, 831 (2007), citing In re M.H., 196 Ill. 2d 356, 362-63 (2001). At the best interest stage of a proceeding to terminate a parent's rights, the parent's rights must yield to the best interest of the child. Veronica J., 371 Ill. App. 3d at 831, citing In re Tashika F., 333 Ill. App. 3d 165, 170 (2002). "The court's best-interest finding will not be reversed unless it is against the manifest weight of the evidence." Veronica J., 371 Ill. App. 3d at 831-32, citing In re H.D., 343 Ill. App. 3d 483, 494 (2003).

Although Amy B.'s appeal challenges the trial court's finding that Delores W. is an unfit parent, she has not challenged the trial court's finding that the termination of Delores W.'s parental rights is in the best interest of Mark W. Our supreme court has consistently held that a party's failure to raise an issue may be deemed a forfeiture (the failure to timely comply with procedural requirements) or waiver (the voluntary relinquishment of a known right) of that issue. Buenz v. Frontline Transportation Co., 227 Ill. 2d 302, 320-21 (2008), citing Sullivan v. Edward Hospital, 209 Ill. 2d 100, 124-25 (2004); see also, 188 Ill. 2d R. 341(e)(7) ("Points not argued [in the appellant's

brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Waiver notwithstanding, the foster home into which Mark W. was placed has provided stability and a nurturing environment for him. Because he has been with his foster parent since he was two years old and has been found to have bonded with his foster parent, whom he refers to as "mommy," and her family, the trial court properly found the bond between them to be a strong one. In light of the aforementioned facts, the trial court's finding that the termination of Delores W.'s parental rights is in Mark W.'s best interests was not against the manifest weight of the evidence.

## Remaining Issues

### A. Illegal Removal of Mark W. From Amy B.

Next, Amy B. argues that, because she was Delores W.'s plenary guardian, the trial court lacked jurisdiction to terminate Delores W. parental rights because Amy B. should be considered to be Mark W.'s legal custodian under section 11a-17 of the Probate Act. The Public Guardian argues that Mark W. was not illegally removed from Amy B.'s care in 1999 because she never had legal custody of him. The Public Guardian also argues that, because Amy B. never filed a timely administrative service appeal, she has waived any issue regarding DCFS's decision to remove Mark W. from her home. The State concurs with the Public Guardian's argument and adds that the Probate Act does not contain a provision that automatically grants legal custodian status to a plenary guardian of a disabled adult simply because that disabled adult has a minor child.

Although Amy B. did not file a timely service appeal of this issue and has, therefore, waived consideration of that issue by this court, we note that it is well settled that the waiver rule is an

admonition to the parties and provides no limitation on this court's jurisdiction. Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 664 (2005); see also In re W.C., 167 Ill. 2d 307, 323 (1995). "A reviewing court may, in furtherance of its responsibility to provide a just result and to maintain a sound and uniform body of precedent, override considerations of waiver that stem from the adversarial nature of our system." Filan, 216 Ill. 2d at 664; see also Dillon v. Evanston Hospital, 199 Ill. 2d 483, 504-05 (2002). Therefore, in order to maintain a sound and uniform body of precedent, we decline to apply the waiver doctrine to the question of whether Mark W. was illegally removed from Amy B.'s custody. Filan, 216 Ill. 2d at 664.

In pertinent part, section 11a-17 of the Probate Act provides:

"(a) *To the extent ordered by the court* and under the direction of the court, the guardian of the person shall have custody of the ward and the ward's minor and adult dependent children; shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance, and professional services as are appropriate, but the ward's spouse may not be deprived of the custody and education of the ward's minor and adult dependent children, without the consent of the spouse, unless the court finds that the spouse is not a fit and competent person to have that custody and education." (Emphasis added.) 755 ILCS 5/11a-17(a) (West 1998).

Our supreme court has consistently held that "[t]he cardinal rule of statutory construction, and the one to which all other cannons and rules must yield, is to ascertain and give effect to the true intent

and meaning of the legislature." State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co., 226 Ill. 2d 395, 401 (2007), citing Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 134 (2005), citing Country Mutual Insurance Co. v. Teachers Insurance Co., 195 Ill. 2d 322, 330 (2001). "The most reliable indicator of legislative intent is found in the language of the statute." State Farm, 226 Ill. 2d at 401, citing Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 320 (2003), citing Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000). Therefore, "[s]tatutory language is afforded its plain and ordinary meaning." State Farm, 226 Ill. 2d at 401, citing Midstate Siding & Window Co., 204 Ill. 2d at 320, citing Michigan Avenue National Bank, 191 Ill. 2d at 504.

The record reveals that on April 9, 1999, when the trial court found that there was probable cause to believe that Mark W. had been neglected and/or abused, it entered a temporary custody order that appointed the DCFS guardianship administrator as Mark W.'s temporary guardian and custodian. Thereafter, on March 6, 2003, as part of the dispositional order, the trial court gave full custody of Mark W. to the DCFS guardianship administrator. Therefore, Amy B. never had legal custody of Mark W because, although section 11a-17 of the Probate Act provides that "[t]o the extent ordered by the court and under the direction of the court, the guardian of the person shall have custody of the ward and the ward's minor and adult dependent children" (755 ILCS 5/11a-17(a) (West 1998)), the trial court never entered an order that made Amy B. the legal custodian of Mark W. Accordingly, because an order was never entered that made Amy B. Mark W.'s custodian, she never had legal custody of Mark W. and there is no basis for her claim that she was entitled to a temporary custody hearing pursuant to section 2-9 of the Juvenile Court Act. 705 ILCS 405/2-9

1-05-3370

(West 1998).[3]

## B. Trial Court Discretion

Finally, Amy B., as plenary guardian, argues that the trial court erred when it denied her attempts to call witnesses, including the minor. The Public Guardian argues that the decision concerning whether Mark W. must appear and testify and whether his testimony would be heard in open court or *in camera* are matters within the trial court's discretion. The State also argues that the trial court did not abuse its discretion when it denied Amy B.'s request to have Mark W. testify.

Illinois courts traditionally hold that "[c]ompelling the appearance of a party at trial is a matter for the sound discretion of the trial court, and the court's power to order a party to appear should only be exercised for a good cause and in such a manner that a party may not be subject to harassment, oppression, or hardship." Pickering v. Owens-Corning Fiberglas Corp., 265 Ill. App. 3d 806, 816 (1994), citing Pacemaker Food Stores, Inc. v. Seventh Mont Corp., 117 Ill. App. 3d 636, 648 (1983). Here, the record reveals that Mark W.'s therapist felt that it would be detrimental for him to appear in court because he had behavioral and emotional problems associated with a fear that Delores W. was going to take him away from his foster mother. The therapist also indicated it could set back Mark W.'s therapeutic progress and intensify his fears and could hinder the child's emotional stability. The trial court understood that Amy B. wanted to ask Mark W. whether he had

---

[3] Section 2-9 of the Juvenile Court Act provides, in pertinent part, that "a minor * * * taken into temporary protective custody must be brought before a judicial officer within 48 hours, exclusive of Saturdays, Sundays and court-designated holidays, for a temporary custody hearing to determine whether he shall be further held in custody." 705 ILCS 405/2-9 (West 1998).

been subjected to corporal punishment and, after balancing his age and the efforts that could be made to make him feel comfortable in court, found that it would not be in his best interests to force him to testify. The evidence establishes that it would have been detrimental to Mark W. for the trial court to force him to appear in court to testify as a witness. Accordingly, based upon the evidence in the record, and following Pickering and Pacemaker Food Stores, we cannot say that the trial court abused its discretion when it refused to force Mark W. to testify.

CONCLUSION

In light of the foregoing, the trial court's July 12, 2005, order that terminated Delores W.'s parental rights and the September 16, 2005, order that denied the motion to reconsider are affirmed.

Affirmed.

O'BRIEN, J., and O'MARA FROSSARD, J., concur.