2020 IL App (1st) 200026-U

FOURTH DIVISION
August 13, 2020

No. 1-20-0026

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* I.S. and I.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 19 JA 295 |
| v. | ) | 19 JA 296 |
| | ) | |
| Laquanda S., | ) | |
| | ) | Honorable |
| Respondent-Appellant). | ) | Patrick T. Murphy, |
| | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the judgment of the circuit court of Cook County finding minors to be neglected and dependent where (a) the court did not assume the role of prosecutor by questioning the respondent-mother and (b) the court properly conformed the pleadings to the proofs when entering a finding of dependency.

¶ 2    Following an adjudicatory hearing in the circuit court of Cook County, minors Im. S. and Is. S. – the biological children of respondent Laquanda S. – were found to be neglected due to an injurious environment and dependent.  On appeal, respondent seeks reversal of these findings based on two alleged errors.  Respondent initially argues that the trial court improperly assumed

the role of a prosecutor by calling her as a witness *sua sponte* after the parties rested. She also contends that her due process rights were violated because the State allegedly failed to amend the petitions for adjudication of wardship to include an allegation of dependency. The State and the Cook County Public Guardian challenge these contentions. As discussed below, we affirm.

¶ 3                          BACKGROUND

¶ 4     On March 28, 2019, the State filed petitions for adjudication of wardship for Im. S. (born in 2018) and Is. S. (born in 2016); the minors' respective fathers are not parties to this appeal. The petitions alleged that the minors were neglected due to an injurious environment pursuant section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)). According to the petitions, respondent was diagnosed with depression and psychosis, did not comply with her medications, and had a history of psychiatric hospitalizations. Respondent's psychiatrist reported that she appeared to be "very dangerous" and the minors were at risk. The petitions further alleged that respondent refused to participate in a psychiatric reassessment.

¶ 5     In an affidavit submitted with the petitions, Letitia Bates (Bates), an investigator for the Department of Children and Family Services (DCFS), averred that respondent had been observed acting in a mentally unstable manner, based on information from other sources. Respondent spoke incoherently, claimed to be from France, and stated that someone was trying to steal her identity. Bates also reported that Is. S. was allegedly developmentally delayed and was not receiving recommended early intervention services. Respondent's older children had been previously removed from her care.

¶ 6     The circuit court of Cook County entered orders which granted temporary custody of the minors to the DCFS Guardianship Administrator, appointed the public guardian as the minors' attorney and guardian *ad litem*, and allowed respondent to have supervised visitation.

¶ 7     During the adjudicatory hearing in September 2019, the State called Telanee Smith (Smith), a DCFS child protection investigator. Smith testified that she was assigned to contact respondent based on allegations of inadequate supervision. On March 24, 2019, Smith went to respondent's residence, which was "a little untidy." Smith observed respondent in bed with her two children and a man wearing boxer shorts; respondent did not know the man's last name. According to Smith, minor Im. S. smelled like old milk.

¶ 8     Smith testified she explained the reason for her visit, *i.e.*, a report that respondent engaged in sexual relations in a bathroom at the St. Bernard Hospital (St. Bernard) emergency room while her children were in the waiting room. Respondent denied this allegation and stated "[s]he didn't know the guy was going to come into the bathroom."

¶ 9     In response to Smith's questions, respondent indicated she was not taking any medication and was unable to provide prescription bottles or prescription sheets. Respondent informed Smith the doctor had given her pills, but they did not make her feel well.

¶ 10    The State next called DCFS investigator Bates, who testified she spoke with respondent by telephone on March 27, 2019. Bates attempted to encourage respondent to be reassessed by a psychiatrist at St. Bernard to determine her current level of functioning. Respondent was "very leery" of St. Bernard and refused to return to the hospital, stating "they're trying to take my children." Bates testified she was uncertain whether respondent understood what was happening. Following Bates' investigation, a "sequence" was indicated with respondent as the alleged perpetrator based on the high risk to the minors due to respondent's mental instability.

¶ 11    During cross-examination by respondent's counsel, Bates testified that the allegation regarding respondent's alleged sexual activity in the hospital bathroom was "unfounded" since it was based on inaccurate information and the minors were in her line of sight at all relevant times.

¶ 12    At the conclusion of Bates' testimony, the State offered exhibits containing respondent's medical records from St. Bernard and Jackson Park Hospital and Medical Center.  Among other issues, respondent reported auditory hallucinations and a depressed mood in 2006, and she was admitted to the hospital with a bipolar disorder diagnosis in 2007.  The records further reflected that in November 2017, her psychiatrist reported she could not identify the president and had difficulty understanding certain simple questions; he opined that she may have borderline intellectual functioning.

¶ 13    The medical records indicated that during a hospitalization in October 2018, respondent made erratic statements regarding obtaining three college degrees and "how her previous baby was stolen from her."  Is. S.'s pediatrician had reported that he had not met the milestones for walking and other cognitive indicators but respondent was very interested in obtaining help for her son's deficits.  The physician who cleared respondent for psychiatric discharge noted that respondent "is intellectually challenged and does not understand things."

¶ 14    The medical records further reflected that in November 2018, her psychiatrist noted that her depression and anxiety were mild, her intellectual and cognitive functions had improved from a prior visit, and she did not have severe psychosis.  During a follow-up appointment in February 2019, however, respondent stated she was depressed; the psychiatrist reported that she did not know the current president and opined that her "psychosis is very likely schizophrenia."

¶ 15    After respondent's medical records were submitted and all parties rested, the trial court observed that the petitions alleged that respondent possibly had a mental illness and may not have been in a position to adequately care for the minors.  The court referenced testimony regarding "an irresponsible act," which the court viewed as potentially indicative of respondent's lack of judgment but insufficient to demonstrate serious mental illness or developmental delay.

The court then stated that it was "imperative" for respondent to take the stand "since we are here trying to determine possible protection for two [young children]." Following an objection from respondent's counsel, the trial court observed that this was a civil case, not a criminal case; that it was unusual but permissible for the court to call its own witness; and that the court was empowered under the Act to direct the proceedings so as to "see that justice is done." The court overruled the objection.

¶ 16 Before the start of respondent's testimony, her counsel moved for a directed finding. After hearing arguments from the assistant State's attorney (the ASA), the court characterized this matter as a "very close case" and denied the motion. The court subsequently denied respondent's counsel's renewed objection to the court calling her as a witness.

¶ 17 In response to questions posed by the trial court, respondent testified that her name is "cumulative Laquanda [last name]"; the president's name is Donald Trump; she was 32 years old; and she attended multiple high schools and colleges, the first of which was "UIC of University." When asked her education level, she responded in a nonsensical manner. The trial court inquired whether she was working, and she indicated that she was "trying to do an eyeglass clinic in the home." When asked where she lived, respondent referenced an inaccurate location. She testified that she saw her children twice a week and that her children told her "they were in some type of village, LaParazzo Child Enforcement or something like that." When asked a relatively simple math question, respondent testified, "I know at the time; but when I did tell him that, I was forgetful." The ASA briefly questioned respondent; the other attorneys declined.

¶ 18 The ASA subsequently indicated the State was seeking a finding of neglect based on an injurious environment. The public guardian's attorney requested that the trial court conform the pleadings to the evidence and also enter a "Dependency B" finding based on respondent's

testimony and the medical records, *i.e.*, a finding that the minors were without proper care because of her mental disability (705 ILCS 405/2-4(1)(b) (West 2018)); the State agreed.

¶ 19    The trial court entered findings of neglect and dependency and opined that respondent could not effectively parent the minors at that time.  In response to a request for clarification from the ASA, the court indicated it was conforming the pleadings to the proofs before the court.

¶ 20    Respondent filed a written motion to reconsider the adjudication findings.  She argued the court assumed a prosecutorial role by calling her to testify.  She also contended the court erred when it allowed the State to amend the petitions to include an allegation of dependency.  The matter was continued while the parties waited for the transcript from the adjudicatory hearing.

¶ 21    In the meantime, the trial court entered disposition orders following a hearing on October 22, 2019, finding respondent was unable for some reason other than financial circumstances alone to care for, protect, train, or discipline the minors.[1]  The permanency orders entered on the same date included a goal of return home within 12 months.

¶ 22    The State subsequently filed a response to respondent's motion to reconsider,[2] arguing that the Act empowers the court to direct proceedings and to act affirmatively in fully gathering information.  The State further asserted that respondent's medical records provided a sufficient factual basis for the dependency finding.  After the trial court denied the motion to reconsider, respondent timely filed the instant appeal.

¶ 23                                    ANALYSIS

¶ 24    Prior to addressing respondent's contentions on appeal, we address the timeliness of our

---

[1] In the disposition order in case number 19 JA 296 (for Is. S.), the trial court did not check any box regarding respondent's inability to care for, protect, train, or discipline the minor.  The court's oral findings during the dispositional hearing, however, plainly applied to both minors.  If there is a conflict between oral and written orders, the oral order controls. *In re Tr. O.*, 362 Ill. App. 3d 860, 868 (2005).

[2] Although the State's response referred to respondent's first amended motion to reconsider adjudication and disposition findings, the record on appeal does not contain a "first amended motion."

decision. The instant case is designated as "accelerated" pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Rule 311(a)(5) provides that "[e]xcept for good cause shown," the appellate court shall issue its decision within 150 days after the filing of the notice of appeal. In this case, the 150-day period to issue our decision expired on May 28, 2020. We note, however, that each of the parties herein requested (and were granted) at least one extension of time for filing their briefs. The public guardian's appellee brief was filed on July 2, 2020; respondent's counsel informed our clerk's office on July 13, 2020 that a reply brief would not be filed. As the case was not ready for disposition until July 2020, we find good cause for issuing our decision after the 150-day deadline. *E.g.*, *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 26.

¶ 25 Turning to the merits, respondent advances two primary contentions on appeal. First, respondent argues that the trial court assumed the role of a prosecutor by calling her as a witness *sua sponte* after all parties had rested. According to respondent, the trial court "was creating a case for dependency where none was alleged to have existed before." Second, respondent argues that her due process rights were violated when the State failed to amend the petitions for adjudication of wardship to include the allegation of dependency. As discussed below, this argument appears to be premised on an inaccurate understanding of the trial court proceedings.

¶ 26 Trial Court Calling Respondent as Witness

¶ 27 When addressing respondent's challenge based on the court calling her as a witness, we must initially consider the standard of review. As a general matter, the State is required to prove allegations of abuse, neglect, or dependency by a preponderance of the evidence, and the trial court's ruling will not be reversed unless it is against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 463-64 (2004); *In re Mark W.*, 383 Ill. App. 3d 572, 585 (2008); *In re J.J.*, 246 Ill. App. 3d 143, 151 (1993). A finding is against the manifest weight of the evidence

only if the opposite conclusion is clearly evident. *Arthur H.*, 212 Ill. 2d at 464; *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 51.

¶ 28 Respondent contends that the specific question of the propriety of calling her as a witness is a purely legal question, subject to *de novo* review. She cites *In re S.D.*, 394 Ill. App. 3d 992, 998-99 (2009), wherein the appellate court applied a *de novo* standard when addressing an issue of first impression: the construction of newly enacted language in a provision of the Act. Respondent's reliance on *S.D.* is misplaced, however, as the instant case does not involve a purely legal issue, *e.g.*, the interpretation of a statute. We instead apply an abuse of discretion standard to the question of the propriety of the examination of a witness. See, *e.g.*, *In re N.F.*, 2020 IL App (1st) 182427, ¶ 23; *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 21; *People v. Murray*, 194 Ill. App. 3d 653, 658 (1990). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 29 As a general proposition, it is never improper for a trial court to aid in bringing out the truth in a fair and impartial manner. *People v. Franceschini*, 20 Ill. 2d 126, 131-32 (1960). "A trial judge may question witnesses to elicit truth, clarify ambiguities in the witnesses' testimony, or shed light on material issues." *Tamesha T.*, 2014 IL App (1st) 132986, ¶ 26. The trial court, however, must not depart from its function as a judge and may not assume the role as an advocate for either party. *Id.*; *People v. Hicks*, 183 Ill. App. 3d 636, 646 (1989) (noting that "[a] trial judge abuses his discretion when he abandons his judicial role and adopts the role of prosecutor"). See also *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 19 (providing that "where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued, a judge has a duty to interpose and avoid the miscarriage of justice

either by suggestions to counsel or an examination conducted by the judge himself"). A trial judge is given wider latitude in examining witnesses in a bench trial, where the risk of prejudice is minimized and the court's inquiries are compatible with its role as fact finder. *Tamesha T.*, 2014 IL App (1st) 132986, ¶ 26.

¶ 30    Based on our review of the record, we can neither find that the trial court's line of questioning impermissibly assumed the role of an advocate for the State or the public guardian nor can we conclude that such questioning prejudiced respondent or was conducted in an unfair or partial manner. *Id.* ¶ 27. Respondent's medical records and the other witnesses' testimony indicated that she experienced intellectual challenges and psychological issues. The trial court asked respondent a series of basic questions: her name, the identity of the president, her age, her educational background, her employment, where she and her children resided, whether she saw her children, and a basic math problem. Although respondent contends that the court's intent was to create a case for dependency, the petitions for adjudication of wardship – wherein the State alleged neglect based on an injurious environment – were based on concerns regarding respondent's mental state. The trial court's decision to call respondent as a witness and its limited questioning were designed to elicit further information that was essential to the adjudication of that issue. See *id.*

¶ 31    We further observe that the questions posed by the court could just have easily elicited responses from respondent that would have been favorable toward her. See *id.* See also *N.F.*, 2020 IL App (1st) 182427, ¶ 29 (finding that the juvenile court did not act as an advocate for the State when it reopened the proofs where the court "did not know what the additional evidence would show"); *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶ 115 (noting that the trial court's request during a suppression hearing to view the firearm and the juvenile's clothing "could have

cut either way"); *In re Al. P.*, 2017 IL App (4th) 170435, ¶ 56 (finding that the trial court's motivation in reopening the proofs was not to favor a particular party but to reach a resolution in the minor's best interest). When denying respondent's motion for a directed finding, the trial court characterized this matter as "a very close case" and stated, "I would like the record to reflect exactly what [respondent] has to say." The fact that the court's unbiased questions elicited responses that were helpful to the State's case does not mean that the court improperly assumed the role of prosecutor. See *Murray*, 194 Ill. App. 3d at 658.

¶ 32    We are unpersuaded by respondent's reliance on *In re R.S.*, 117 Ill. App. 3d 698 (1983). In that case, the petition for adjudication of wardship alleged delinquency based on R.S.'s purported involvement in a burglary. *Id.* at 700. During the dispositional hearing, the trial judge twice called another individual, Keith Lambert, to testify. *Id.* at 702. The trial court believed that Lambert knew whether R.S. was a participant in the burglary since Lambert had admitted his involvement in the burglary during a previous court appearance on charges against Lambert. *Id.* at 704. When Lambert initially refused to answer the court's question, *i.e.*, whether R.S. was involved in the incident, the trial court held him in contempt. *Id.* After being called back by the judge and admonished as to sentencing for contempt if he would not purge himself by answering, Lambert admitted R.S. was an accomplice. *Id.*

¶ 33    The appellate court in *R.S.* found that the trial court exceeded the bounds of judicial discretion by calling Lambert to testify. *Id.* Lambert was not listed as a State witness, and the judge knew of Lambert's involvement because of his knowledge of an earlier proceeding. Although the judge asked a single question of Lambert, the response incriminated R.S. *Id.* at 704-05. Unlike in *R.S.*, the trial court herein did not take on the role of prosecutor because, among other things, the questions posed by the court could have elicited responses that were

favorable to respondent. Furthermore, *R.S.* was decided before the adoption of Illinois Rule of Evidence 614, which provides in part that a court may, on its own motion, call witnesses. Ill. R. Evid. 614 (eff. Jan. 1, 2011).

¶ 34 We further note that section 1-2(2) of the Act expressly empowers the trial court with the statutory authority to "direct the course" of all proceedings under the Act "so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act." 705 ILCS 405/1-2(2) (West 2018). We find that the trial court herein, through its questioning of respondent, gathered and clarified information bearing on the welfare of the minors. *Tamesha T.*, 2014 IL App (1st) 132986, ¶ 27. See *In re Patricia S.*, 222 Ill. App. 3d 585, 592 (1991) (noting that under the statutory section addressing temporary custody hearings, "the Act requires that [the court] must act affirmatively, and perhaps at times aggressively, to ferret out information before it can decide that a child's interest is better served by removal from the family"). Rather than assuming the role of advocate, the trial court herein attempted to assure that evidence which was relevant to the proper disposition of this case was not omitted. See *N.F.*, 2020 IL App (1st) 182427, ¶ 27 (stating "[i]t is obvious to us that the juvenile court was intent on understanding the evidence before rendering its decision"); *Tyreke H.*, 2017 IL App (1st) 170406, ¶ 115 (noting that "the court was on a mission to uncover the truth").

¶ 35 For the foregoing reasons, we conclude that the trial court did not abuse its discretion in calling and questioning respondent as a witness.

¶ 36                           The Dependency Allegation

¶ 37 Respondent next contends that her due process rights were violated when the State failed to amend the petitions for adjudication of wardship to include an allegation of dependency.

¶ 38    The fourteenth amendment of the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.  U.S. Const., amend. XIV, § 1.  "These liberty interests that are protected by the due process clause include a parent's fundamental right in the care, custody, and control of his or her children."  *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 44.  Claims of due process violations are questions of law which we review *de novo*.  *Id*.  "*De novo* consideration means we perform the same analysis that a trial judge would perform."  *Erie Insurance Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 14.

¶ 39    In the petitions for adjudication of wardship at issue in the instant case, the State alleged neglect due to an injurious environment.  See 705 ILCS 405/2-3(1)(b) (West 2018).  Petitions for adjudication of wardship are civil in nature and must comply with the general rules for civil pleadings.  *In re J.B.*, 312 Ill. App. 3d 1140, 1143 (2000).  A party may not succeed in a civil proceeding on a theory that is not contained in the party's complaint.  *Id*.

¶ 40    Under section 2-13(5) of the Act, however, the court may allow amendment of the petition to conform with the evidence at any time prior to ruling.  705 ILCS 405/2-13(5) (West 2018).  Before the trial court's ruling herein, the public guardian's attorney – and then the ASA – sought a dependency finding based on the evidence presented during the adjudicatory hearing.  A minor is dependent under section 2-4(b) of the Act if he or she is "without proper care because of the physical or mental disability of his parent, guardian or custodian."  705 ILCS 405/2-4 (West 2018).  In making this determination, the focus is on the parent rather than the minor.  *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 50.

¶ 41    Although respondent contends on appeal that the State failed to amend the petitions for adjudication of wardship, the record reflects that the petitions were, in fact, amended to include the dependency allegation.  *Cf. J.B.*, 312 Ill. App. 3d at 1145 (reversing the judgment where the

State never amended the petition). While respondent also asserts that the trial court circumvented her due process rights by calling her to testify, she fails to provide any support for this proposition. The failure to argue a point in the appellant's opening brief results in forfeiture of the issue. *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010). See also Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring citation of the authorities and the pages of the record relied on); *Northbrook Bank v. Abbas*, 2018 IL App (1st) 162972, ¶ 34 (noting the court is not a repository into which the appellant may dump the burden of research and argument).

¶ 42 Even if we were to consider a due process challenge to the trial court's decision to call and question respondent or to the dependency finding, we find no error. Although we recognize that a parent's right to raise her biological child is a fundamental liberty interest, the paramount consideration in any proceeding initiated under the Act is the best interest of the child. *Arthur H.*, 212 Ill. 2d at 464, 477; *In re J.L.*, 2016 IL App (1st) 152479, ¶ 107. As discussed above, the trial court's conduct of the proceedings was consistent with the purpose and policy of the Act, *i.e.*, ensuring the best interests and safety of minors Im. S. and Is. S. See *Arthur H.*, 212 Ill. 2d at 467. Furthermore, the record demonstrates that the dependency finding and the neglect finding were based on the same factual allegations and evidence regarding respondent's mental state. Under the particular circumstances herein, respondent's due process rights were not violated.

¶ 43                               CONCLUSION

¶ 44 For the reasons discussed above, the judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 45 Affirmed.